Attorney General, argument not to exceed 15 minutes per side. Ms. Jewel and Ms. Wolfe, you may proceed when ready. Good morning, Your Honors. May it please the Court. My name is Lucille Jewel. I'm with the University of Tennessee Appellate Litigation Clinic. I am counsel of record in this case. It is my honor to introduce the Court to Alexandra M. Wolfe. She is a third-year law student at the University of Tennessee College of Law in good standing. She is familiar with the Tennessee Rules of Professional Conduct. We have the consent of our client for her to participate in all aspects of this appeal. The Court has previously granted our motion for her to participate in oral arguments of this case. And she has, in addition, participated intensively in the briefing process of this case. Thank you, Your Honors. Thank you. May it please the Court. My name is Alexandra Wolfe. I am counsel for plaintiff Santos Pagoada-Galeas in this matter. I'd like to reserve three minutes for rebuttal at this time. This case is an appeal of a VI decision denying asylum to a Honduran child who was persecuted by MS-13, a transnational criminal organization. MS-13 attacked Santos twice, murdered several of his soccer teammates, one of which was deported shortly before his murder by the U.S. And they've now murdered his 13-year-old little brother. The VA improperly denied the asylum application and his motion for remand, which sought a new hearing to consider the death of his 13-year-old brother. There are multiple issues in this case, so in the interest of time, I'd like to focus my argument on two of those issues. First, the motion to remand, and second, how Baroof v. Lynch applies to the adverse credibility determination in this case. I'll begin with the motion to remand because it can be decided separately from the adverse credibility determination and the merits of the asylum case. Mana Ahmed instructs that the IJ and the BIA must explicitly scrutinize the previously unavailable evidence for relevance to the asylum claim. The BIA, in their order, stated that they analyzed for materiality. However, they disregarded important aspects of the evidence that were attached to the motion to remand. Importantly, the mother's letter states that Junior, the 13-year-old brother, was murdered by MS-13. This directly conflicts with the BIA's assertion that no evidence was attached to support the assertion that Junior was murdered by the same gangs for the same reasons. Additionally, they disregarded Santos' affidavit, which identifies his brother as the boy depicted in the news report. And, confirms that his mother was the person that sent him the news report, implying that she also identified Junior as the boy in the news report. Additionally, Santos stated in that affidavit that he believed his little brother was murdered for the same reasons that he was targeted by MS-13. Also, the motion to remand stated that the motion did not demonstrate that his brother was killed by gang members because of his membership in any of the proposed social groups. However, the motion to remand stated that the new evidence went directly to a new theory of family as a particular social group, specifically the Galeas family. Also, the news report does not identify Junior by name. However, Junior was 13 years old at the time, and it's unreasonable for the BIA to expect him to be identified by news organization by name. Because Santos established a prima facie case, there is a reasonable likelihood that this new evidence went to a new theory of family and corroborated his previous statements. This evidence is relevant to the asylum finding underlying this case. Therefore, the BIA abused its discretion. Moving on to credibility. One quick question. So, if we think the motion to remand was decided incorrectly, what happens? Does it just go back to the BIA for consideration, or does it go back to the IJ? In this case, it should go back to the IJ for a new hearing because the BIA abused their discretion in denying that motion to remand. So, it should go to the immigration judge for a new hearing on the fact that his younger brother was murdered by the same gangs for the same reasons. But isn't your argument that the BIA just didn't properly consider the evidence, not what they would have done had they properly considered the evidence? So, shouldn't it go to the BIA for consideration of the motion to remand? Yes, Your Honor. It could go to the BIA for consideration, but we believe the evidence is substantial enough in order to allow for a new hearing by an immigration judge. Is this evidence, to which you're pointing, and I assume that you're pointing to family membership at this point, is that evidence new? Is there any question? Has there ever been any question of the 13-year-old lawful family? No, there was never any question that the 13-year-old was his little brother. Additionally, he was murdered on September 18, 2014, or around that date. So, it was after the conclusion of the hearing and renders the murder and the evidence of the murder previously unavailable and new evidence. If you have no further questions, I'll move on to the credibility determination. So, in Marouf, this court held that inconsistencies are not substantial evidence when used for an average credibility determination that is unsupported by a consistent and corroborated record, especially when the IJ fails to give the petitioner an opportunity to explain those inconsistencies. Here we have a largely consistent record that's corroborated by news reports, expert affidavits, affidavits and letters from family members and friends. I know that there are some explanations. I mean, he was young, he had PTS, but we don't decide credibility, and his testimony was really inconsistent. His testimony did have some inconsistencies. However, under Marouf, this court has limited their review to only the inconsistencies that are specifically adopted by the BIA. In this case, there are only three inconsistencies adopted by the BIA. First, that he had a misstatement as to when the second altercation occurred. Second, the method of entry. Third, whether he came to this country for asylum or to work. So, if we limit it to only those three inconsistencies as required under Marouf, then it's only three inconsistencies, all of which have explanations. There's even evidence in the record to show that for two of those inconsistencies, Santos provided, during testimony, explanations that were not included in the immigration judge's order. And on those two instances, the immigration judge stopped him from explaining and told him, Sir, you weren't asked about money that was loaned to you. You would do well to listen closely to the question and answer the question. This was what the immigration judge told him after he tried to explain how he did not pay for a coyote when he entered the United States. On the second occasion, dealing with why he came to the United States, Santos explained, Well, we told immigration that we came here to work because we had a problem in my country, but they didn't pay any attention to us. Again, the immigration judge stopped him and said, Sir, you would do well to answer the question that the government attorney is asking you. This is evidence that the immigration judge did not meet his minimum burden of at least considering the explanations given and trying to determine if an inconsistency actually exists as required under Baruch. In this case, we can see that he did not meet that minimum standard, and therefore, if he had met that minimum standard, then maybe we'd have more information on those inconsistencies and if an inconsistency actually existed. In addition to not considering the explanations, there's also room for speculation on one of the inconsistencies, which is improper to support an adverse credibility determination. In addition, the asylum officer's notes don't specify which time he was questioning about, which time Santos entered the country. So we're not sure if he was talking during the asylum officer's notes about the first time or the second time that he entered the country, meaning that there may not be a discrepancy at all with his method for entering. Further, there's an opportunity for mistranslation for the method of entry as well, because the interpreter at one point during the transcript had to ask what a coyote was, which was a key part of that inconsistency. Additionally, the other inconsistency is misstatement of when the second altercation occurred. In Baruch, we know that PTSD can impact memories and specifically dates and specific details of when that occurred, when those traumatic events occurred. Here we have even more favorable facts than Baruch, because Santos was actually diagnosed with PTSD by Dr. Perez Camarino, and there's a psychological evaluation report in the record. So him misstating the date or the time of that second altercation should not have been substantial evidence for an adverse credibility determination. So this case can be decided under Baruch holding that these three inconsistencies, once the scope of review is limited to only the BIA's specifically adopted inconsistencies, this case can be decided under Baruch that these three inconsistencies are not substantial evidence for an adverse credibility determination. And the judge cherry-picked these inconsistencies and did not consider the explanations, or all of the explanations for these inconsistencies. That adverse credibility determination clouded the rest of the hearing, because it did not give him a meaningful opportunity to be heard, and in the IJ's own words, doomed his asylum claim. So, therefore, this case should be reversed and remanded because the adverse credibility determination is not supported by substantial evidence, and all three of the inconsistencies that I just listed were derived from the asylum officer's note and the I-213, which we hold to be unreliable documents. Please reverse and remand this case for a new hearing so that Santos may have a meaningful opportunity to be heard. Good morning, Your Honor. May it please the Court, Tiffany Walters for Respondent, United States Attorney General. Substantial evidence supports the agency's finding that Petitioner failed to present a credible claim for asylum. We testified inconsistently with his asylum affidavit, his prior statements to an asylum officer, and a border patrol officer. In addition, the Court did not abuse its discretion in denying the motion to remand. I'll start first by addressing the adverse credibility finding. The agency relied on numerous inconsistencies that revolved important aspects of this claim. First, Petitioner testified before the asylum officer that during his first encounter with gang members, he was beaten. Then, later that same day, he was chased by gang members, but managed to escape. His asylum affidavit recounts the same incident, that he was beaten by gang members, and then later that same day, he was chased, and managed to escape by jumping a wall or fence and hurting his knee. In his testimony before the immigration judge, he again testified that he was beaten by gang members. And then he testified that the next encounter he had with gang members was one week later, and during that encounter, he was shot at and was chased, but managed to escape, again, by jumping a fence or a wall and hurting his knee. Now, Petitioner was afforded the opportunity to explain this inconsistency, and was confronted with this inconsistency. And, as explanation, Petitioner didn't testify that he misunderstood, that he misremembered, that it wasn't adequately translated. His explanation was, instead, that all three incidents occurred. Now, the immigration judge did refer to this explanation when he found that really it was the same incident he was talking about, that in his asylum interview, he testified that this chase happened the day of his beating, and in his testimony before the court, it happened one week later. So, in fact, his explanation that there were, instead, two chases further detracted from his credibility. Another inconsistency relied on by the immigration judge involved his statements made to border patrol officers shortly after Petitioner. In his statements to border patrol officers, he indicated that he had come to the United States to work, and did not have, and was not seeking asylum, did not have a fear of return. Now, while Petitioner challenges the reliability of this document, before the immigration judge, Petitioner admitted that he told border patrol officers that he came to the United States to work, and that he wasn't, didn't have a claim for asylum. I don't think he admitted that he didn't have a fear of return. I'm sorry, I'm wondering how, did he testify that he did say that he did have, I know he testified that he did say that he did work. Well, that he wasn't seeking asylum. He didn't tell them he was going to apply for asylum in his testimony before the immigration judge. So it wasn't specifically that he didn't have a return of going back, but he did indicate that he didn't tell the border patrol officers that he was going to seek asylum. Okay, which is not to say the same that he admitted that he didn't have a fear of going back. Certainly. The third inconsistency involved his testimony regarding how he entered the United States. In his asylum interview, he indicated that he traveled with four friends and hired a smuggler. But in his testimony before the immigration judge, he claimed he never hired a smuggler. He traveled with one friend and no one else. So this was another inconsistency identified by the immigration judge. But he explained that there were some other people traveling with him, right? There were some other people that weren't really friends. He did, but he previously traveled, indicated that he didn't travel with anyone else. So it's a little perplexing why he stated that and then proceeded to explain that he was with other individuals that he knew from the neighborhood. So there's some inconsistency there. When the immigration judge considered these explanations and determined that under the totality of the circumstances, the petitioner wasn't credible. This case is significantly different from Marouf, which the petitioner discussed. In Marouf, the specific date inconsistency involved an inconsistency between the alien and his wife as to when his nose was injured and when he had corrective surgery. So one of the petitioners testified that it was, say, April and then December 2006, and the wife that it was April and December 2007. In being offered an opportunity to explain this inconsistency in Marouf, the petitioner indicated that it was a result of a misstatement or a translation. But that's not the explanation we have here for the date inconsistency. Here, instead of saying something was misunderstood, he said, no, in fact, there were two chases. So it's very different. In addition, in Marouf, the petitioner offered corroboration as to the corrective surgery on his nose. So the corroboration went specifically to the incident in question. Here, while the petitioner has offered corroboration, nothing corroborates the specifics regarding his encounter with gang members. The petitioner also challenges the reliability of the asylum officer's nose, which were Border Patrol officers, or the I-213. Here, they contain sufficient indicia of reliability to render their use fundamentally fair. Under this court's analysis in Kulabali, the asylum officer's nose had all this indicia of reliability that we could want except perhaps the actual testimony of the asylum officer. Here we have detailed information regarding the petitioner, that he was under oath, that he had an interpreter, the record of questions asked and answers given, and he was provided an opportunity to explain before the immigration judge. What about the petitioner's point about the notes, that there may not be an inconsistency on how he got to the country, because it's not clear whether those notes were part of the first entry or the second entry? I just looked at the record while the petitioner was arguing, and it appears the asylum officer's question was regarding his most recent entry into the United States. In light of that question, I feel like there's probably not much ambiguity as to what the asylum officer was referring to. The notes actually say which entry? Well, they say the question was regarding his most recent entry was the phrase that the asylum officer used. So that makes it quite clear, apart from any date issues, which entry the asylum officer was referring to. What about the motion? When you look at what he gave, what he submitted, and you look at the answer, I find it very unsatisfactory that they were dismissing things for really silly reasons and not seeming to recognize that he was submitting something that probably should cause them to take another look. They did take a look at the evidence, and the critical factor that was missing from the evidence was any explanation of why his brother was targeted. Unfortunately, conditions in Honduras are bad, and gang activity is rampant. In order to remand, we need to understand some connection between his brother's claim and his claim. Here we have an affidavit from a petitioner which says that he was targeted for the same reasons, by the same gangs as I was, but it doesn't provide any factual basis for that belief. We have a mother's affidavit who indicates that he was killed by MS-13 members, but doesn't indicate why he was targeted or any of the circumstances surrounding the murder. We have a death certificate that doesn't provide a cause of death, and we have a news report that does not provide a name for the individual, but indicates that this unidentified individual was shot. Perhaps we can reason that he was killed by MS-13 members from the mother's affidavit, but we still don't know why he was targeted. Even in petitioner's testimony before the immigration judge, he was unclear why he personally was targeted. He indicated that gang members had come back looking for him, but then they had become less interested in him and were more interested in recruiting his brother. His second affidavit specifically says that the gang members were inviting his brother to come out with them in the town. So it's unclear whether or not the murder of his brother has any connection to his beating four years prior. And without that connection to demonstrate that he was targeted based on his family membership or based on any of the proposed social groups previously argued to the board, there was insufficient information to find that it was a material development and petitioner's claim. How do we know the DIA considered the mother's affidavit? Where in the petition do we get that? They're generally presumed to consider all the evidence before it. So here they don't specifically refer to the mother's affidavit, but the fact that the mother's affidavit provides no evidence as to why his brother was targeted supports the DIA's ultimate conclusion that there's no evidence to support his assertion, petitioner's assertion, that his brother was murdered by the same gang for the same reasons that he was targeted. So while they don't specifically address the mother's affidavit, their ultimate finding regarding evidence is that some of the evidence submitted that there's nothing to establish why his brother was murdered. The court has no further questions regarding the credibility of termination or commissions of demands. I just urge that because the record does not compel the conclusion that the petitioner is credible, the court should deny the petition for review. Thank you. You're welcome. The respondent alleges that the asylum officer's notes do not hold a discrepancy between the first and second time that he entered the United States. However, I pulled the asylum officer's notes and the exact question asked was, tell me about your journey to the U.S. But it does not state a date or first or second time limiting that question. Second, although the DIA did state that the adverse credibility determination was supported by numerous inconsistencies, numerous is not a specific or cogent reason. Therefore, we must rely on the specific inconsistencies that were listed in the DIA's opinion, which were the three that I outlined in my principle argument. Third, as to the motion to remand, the MS-13 organization is allowed to have mixed motives for targeting the young people. This murder of his young brother goes back to the original claim because MS-13 was following through on the death threats that they issued against his family. Therefore, it is a part of the original claim, but also creates a new theory of targeting his family and allowing the Clay's family to be the particular social group that needs to be explored at a new hearing. If you have no other questions, I just urge that you're... Thank you very much, and we want... The case will be submitted. I'm going to call the next case.